PAUL GELLENTHIN, PLAINTIFF-APPELLANT, v. J. & D., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 23, 1961—Decided December 22, 1961.

Before Judges GAULKIN, KILKENNY and HERBERT.

*Mr. Lewis M. Holland* argued the cause for appellant (*Messrs. Warren, Chasan & Leyner,* attorneys).

*Mr. Leon S. Wolk* argued the cause for respondent (*Messrs. Basile, Delchop & Wolk,* attorneys).

The opinion of the court was delivered by

HERBERT, J. S. C. (temporarily assigned). This case has been tried twice. The first trial resulted in a dismissal at the end of the evidence for the plaintiff. On appeal there was a reversal, *Gellenthin v. J. & D., Inc.,* 62 *N. J. Super.* 224 (*App. Div.* 1960), and a new trial followed. The outcome of the second trial was a jury verdict in favor of the defendant and the plaintiff now appeals again.

The plaintiff's claim arose out of a fall on an icy sidewalk in Cliffside Park, Bergen County. Early in the evening of December 5, 1957 he was walking east down the steep slope of Oakdene Avenue. He had just passed the defendant's property and had reached a part of the public sidewalk in front of the adjacent premises of another owner when the accident happened. The theory of liability was that the ice on which the plaintiff slipped was caused by the freezing of water from melting snow which had run down during the day from the defendant's property, particularly from leaders or downspouts constructed to discharge onto the defendant's

paved driveway which was graded downward toward the sidewalk the plaintiff was using.

A brief discussion of the legal principles applied at the first trial and on the first appeal will be a good introduction to the questions now before us. When the plaintiff's case was dismissed on motion, among the authorities relied upon by the trial judge was *Pierri v. Faure,* 14 *N. J. Super.* 172 (*App. Div.* 1951) in which the following statement is found at *page* 175:

"The general rule is that an abutting owner who collects the natural drainage of water from the roof of his building and discharges it upon the sidewalk through a pipe or other orifice is not liable to a pedestrian who, after this water had frozen upon the sidewalk, slips upon the ice so formed. *Zwickl v. Broadway Theatre Co.,* 103 *N. J. L.* 604 (*E. & A.* 1927); *Jessup v. Bamford Bros. Co.,* 66 *N. J. L.* 641 (*E. & A.* 1901). The exceptions to this general rule are set forth in *Saco v. Hall,* 1 *N. J.* 377 (1949)."

Then, in deciding the earlier appeal for the plaintiff, this Division called attention to the change in our law on surface waters made by *Armstrong v. Francis Corp.,* 20 *N. J.* 320 (1956), saying at *pages* 231 and 232 of 62 *N. J. Super.*:

"In *Armstrong, supra,* the court determined that, in resolving disputes between owners of private property, allowance should be made for 'differences in factual situations' in determining the liability of the landowner who alters the flow of surface waters with resulting material harm to other landowners (20 *N. J.,* at *page* 326). It rejected the 'common enemy' rule theretofore controlling, declared its 'adherence' to the ' "reasonable use" rule laying down the test that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.' (20 *N. J.,* at *page* 327). In this connection the court declared (20 *N. J.,* at *page* 330):

'The rule of reasonableness has the particular virtue of flexibility. The issue of reasonableness or unreasonableness becomes a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused. the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter.'

The *Armstrong* case doctrine has been recognized in subsequent decisions. *Hopler v. Morris Hills Regional District*, 45 *N. J. Super.* 409 (*App. Div.* 1957) ; *Yonadi v. Homestead Country Homes, Inc.*, 42 *N. J. Super.* 521 (*App. Div.* 1956).

While, as we have above noted, *Armstrong*, *supra*, involved a dispute between owners of private property and not, as in the instant case, an alleged invasion of a public easement, when we recognize that the 'common enemy' rule foundation of *Jessup* is no longer the law, the significance of *Armstrong* in the instant case is emphasized. We therefore hold that the doctrine enunciated in *Armstrong*, *supra*, decided by the Supreme Court five years after the decision in *Pierri v. Faure*, *supra*, 14 *N. J. Super.* 172, requires the application of the 'reasonable use' rule in the case at bar. The trial court erred in not applying it and its judgment, dismissing plaintiff's case, is reversed."

The next step was a new trial, at which the plaintiff submitted ten requests to charge, including one reading as follows :

"5. The issue is whether the defendant made a reasonable use of its property in the circumstances. *Gellenthin v. J. & D. Inc.*, 62 *N. J. Super.* 224 (*App. Div.* 1960). If the defendant used its property in an unreasonable manner, causing an obstruction or impediment on the public sidewalk, then it was guilty of creating or maintaining a nuisance."

The substance of that request, though not the wording, was included in the charge given by the trial judge; and the plaintiff does not argue to the contrary, nor does he otherwise argue on this appeal that there was any failure to charge the law as stated in our opinion on his first appeal.

The plaintiff does contend, however, that the trial judge erred when he failed to charge four of the other requests submitted. Three of these can be discussed collectively, and we quote them :

"4. Any obstruction unnecessarily incommoding or impeding the lawful use of a street by the public is a nuisance for which, upon the happening of an accident as a result thereof, the creator of the nuisance must respond in damages. *Christine v. Mutual Grocery Co.*, 119 *N. J. L.* 149, 152 (*E. & A.* 1937) ; *Saco v. Hall*, *supra*.

\*     \*     \*     \*     \*     \*     .\*     \*

6. If the defendant knew, or should have known, that the manner in which it constructed and maintained its drainage system and leader would, and did, cause an obstruction in the public sidewalk, it was bound to take all reasonable steps calculated to avoid that result.

7. If the defendant so constructed or maintained a structure upon its premises as to cause an artificial discharge of water upon the sidewalk, which, by its freezing, made the use of the sidewalk dangerous, it is liable to the plaintiff, if, while he was rightfully on the sidewalk and exercising due care, he was injured as a result of the dangerous condition. 25 *Am. Jur., Highways*, § 523, *p.* 805."

The only "obstruction" or "impediment" relied on by the plaintiff was the ice on the sidewalk.

■ Requests 4, 6 and 7 reject, or at least omit, the principle of "reasonable use" which was stated for this case in our earlier opinion (62 *N. J. Super.* 224). They are inconsistent with that opinion and, incidentally, are inconsistent with the plaintiff's own request number 5, quoted above. By urging that these three requests should have been charged, the plaintiff is making an attack upon the rule we have already stated for this case and is in reality seeking a change in that rule which, if put in force, would make an owner liable, without reference to the principle of reasonable use of his land, for surface water which flows therefrom and freezes on a public sidewalk. For many years it has been the rule in New Jersey that the basic principles governing the responsibility of an owner for the runoff of surface water from his land shall be the same whether the flowing water causes damage to property of others or freezes on a public sidewalk and causes a pedestrian to fall. *Jessup v. Bamford Bros. Silk Mfg. Co., supra.* We find no basis in the present appeal to change the views on that subject which were expressed on the first appeal.

■ The court at the second trial properly followed our opinion by charging the substance of the plaintiff's request number 5. There was no error in the refusal to use requests 4, 6 and 7.

■ The plaintiff also argues that reversible error was committed when his third request was rejected. It reads:

"3. The main or primary purpose for which a sidewalk exists is to afford the traveling public a safe place on which to walk, and the ownership of the sidewalk, for all substantial purposes, is in the public. *Saco v. Hall*, 1 *N. J.* 377, 382 (1949)."

Failure to charge this request, if error at all, was harmless. There was no issue in the case about the plaintiff's fall having occurred on a public sidewalk where he had a right to be; nor was any question raised, except by this request, about the legal nature of a sidewalk. We cannot perceive how the request, if given, would have contributed anything of value toward the solution of the controversy which was actually before the court. See *Meny v. Carlson*, 6 *N. J.* 82, 94 (1950).

Several other points are offered as part of plaintiff's argument for a reversal. In opening to the jury, counsel for the defendant said the plaintiff could not sue the owners of the property in front of which he fell. The attorney for the plaintiff immediately interrupted, and contradicted the statement. He made no formal objection and did not ask the court to admonish his adversary or to give any direction to the jury at the time. Though the proper procedure would have been to present the matter by a timely formal objection to the trial judge for appropriate action, we think the plaintiff's attorney, by the irregular procedure he followed, himself corrected the allegedly improper statement by contradicting it. There was no reversible error. In addition to the immediate contradiction, the charge to the jury at the end of the trial included a direction to the jury to be governed by the evidence as presented and a warning not to rely on factual statements of counsel or the court. To refuse to give at the end of the case the detailed charge on this point requested by the plaintiff, when the point had not really been objected to at the time it arose and had been corrected by plaintiff's counsel in his own way, was well within the trial judge's area of discretion.

The plaintiff also argues prejudicial error was committed when the trial judge, in the jury's presence, an-

nounced his rulings on requests to charge submitted by counsel for both parties. The prejudice to the plaintiff, it is said, came from a rejection of more requests of his than the number of defendant's requests which were rejected, thereby creating an impression that the plaintiff "was seeking some unfair advantage." No authorities are cited in support of this argument and there is no merit in it. The trial court referred to the requests of both parties merely by number. There were ten of the plaintiff's and seven of the defendant's. Three of the plaintiff's drew an unqualified rejection, but the 14 others were refused with the qualification, "except insofar as I have already charged." It has been held that even though a trial judge read to the jury the text of requests which he refused to charge, no reversible error was committed. *Bigos v. United Rayon Mill*, 301 *Mass.* 76, 82, 16 *N. E.* 2d 44, 47 (*Sup. Jud. Ct.* 1938).

At one point in the charge the trial court told the jury that an owner is under no duty to keep the sidewalk in front of his property free from natural accumulations of ice and snow. The plaintiff's final contention is that this was error. The language complained of came after instructions in which it was made clear that the problem for decision in this case arose out of the discharge of surface water from the defendant's property; and subsequent portions of the charge were to the same effect. The trial judge was merely contrasting two situations: one in which water from melted snow has been caused to flow by some man-made device upon a sidewalk and has frozen; and one in which the deposit of snow or ice is entirely nature's handiwork. The plaintiff does not contend that the proposition stated by the court was unsound, but says it was inapplicable to this case, was misleading and prejudicial. Considering that the sidewalk along the defendant's property above the point at which the plaintiff fell as he walked down the hill had not been cleared of the heavy snow, there is considerable doubt that this portion of the charge was inappropriate to the facts of the case at hand, but if it was, there was no

reversible error. A similar problem was presented in *Sku-piensky v. Maly*, 47 *N. J. Super.* 409, 413 (*App. Div.* 1957), affirmed 27 *N. J.* 240, 249 (1958), where the plaintiff had fallen on private property and the trial court included in the charge a statement that if the accident had happened on a public sidewalk, there would be no liability. Holding that the charge was proper, the Supreme Court said:

"As to the plaintiff's contention that certain isolated portions of the trial judge's charge were improper and prejudicial, we think it obvious that her arguments have no merit. The instructions in question merely illuminated, by way of contrasting examples, the nature and scope of the duty owed by defendants to plaintiff. There were no contradictory statements as to the facts involved or the principles of law applicable. When considered in the whole context of the charge, the remarks complained of were not prejudicial to the plaintiff's rights."

The same comments can be applied with equal force to the contention of the present plaintiff.

The judgment is affirmed.