MARGARET BECHTOLD, administratrix, *vs.* JOSEPH F. RAE
& another.

Franklin.    September 17, 1918. — October 10, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence,* In maintaining elevator, Of one controlling real estate.  *Elevator.*

In an action by an administrator against the proprietor of a hotel for causing
the death of the plaintiff's intestate by negligence in the maintenance and
operation of an elevator in which a night watchman of the defendant had
started to take the intestate to his room as a guest at the hotel, there was evi-
dence on which it could have been found that a rear door of the elevator was
open at the time the elevator was started and remained open up to the time
of the accident and that the failure to close this door contributed to the happen-
ing of the accident and was negligence on the part of the defendant. There also
was evidence that the defendant had violated certain regulations made by the
board of elevator regulations under St. 1913, c. 806, that the license of the
defendant's night watchman to operate an elevator had expired and that it
had not been renewed at the time of the accident and that the elevator was not
equipped, as required by the regulations, with an interlocking device that
would prevent the operation of the elevator unless the door was closed. It
could have been found that these violations of the regulations, which constituted
a penal offence, contributed to the happening of the accident. *Held,* that, due
care on the part of the plaintiff's intestate being presumed under St. 1914,
c. 553, the case properly was submitted to the jury.

In the case above described it was *said* that it was not necessary to consider,
whether without the presumption created by the statute there would have been
evidence of due care of the plaintiff's intestate.

TORT by the administratrix of the estate of Jacob Bechtold,
late of Greenfield, against the defendants, conducting as partners
a hotel in Boston called the Crawford House and maintaining
therein an elevator used for conveying guests to various parts of
the hotel, for negligently causing the death of the plaintiff's in-
testate on September 12, 1916; with a count, afterwards added by
amendment, claiming damages for conscious suffering of the
intestate.  Writ dated January 19, 1917.

In the Superior Court the case was tried before *Hamilton,* J.
The facts which could have been found upon the evidence are
stated in the opinion.  At the close of the evidence the defendants
made a motion that a verdict be ordered for the defendants.  The

judge denied the motion. The defendants then asked the judge to make the following rulings:

"1. There is no sufficient evidence of conscious suffering to warrant a finding of any damages on that count.

"2. In no event can there be a recovery of damages for a period of more than one second.

"3. There is no evidence of any negligence on the part of the elevator [night watchman] Webster which was a proximate cause of the accident, and the fact that Webster did not have a license at the time of the accident was not a proximate cause of the accident."

The judge refused to make any of these rulings and submitted the case to the jury. The jury returned a verdict for the plaintiff on the first count, for causing death, in the sum of $5,000. On the second count, for conscious suffering, the jury found for the defendants. The defendants alleged exceptions, which, after the death of *Hamilton*, J., were allowed by *Wait*, J.

*C. S. Knowles*, for the defendants.

*C. Fairhurst*, (*W. A. Davenport* with him,) for the plaintiff.

CROSBY, J. This is an action brought against the defendants, who conducted the Crawford House, a hotel in Boston, for the conscious suffering and death of the plaintiff's intestate, while he was a guest and was being carried in an elevator from the office floor to the floor on which he had been assigned a room.

His death was caused by being caught between the floor of the elevator and the upper casing of a door leading into the elevator well. The front of the elevator, where the door opening into the office was located, was sixty inches wide and fifty-two inches deep; directly opposite the door above referred to there was another door, at the back of the elevator. This rear door was used to reach floors in the rear of the hotel which were not on the same level with the floors to which access was had through the front door. The floor next above the office, called the parlor floor, was twenty-two inches above the office floor, and was reached by means of the elevator through its rear door. The elevator, a power passenger car, was operated by means of a lever located at the left side of the car, as it was entered, between the front and rear doors; the lever being about eighteen inches from the front door and about thirty-four inches from the rear door.

The accident occurred about half past two o'clock on the morning of September 12, 1916. The elevator was in charge of one Webster, a night watchman in the employ of the defendants. He testified that he passed the deceased and got the key to the room at the office and when he returned the deceased, who was a large man, had just entered the elevator and stood "between the lever and the door at the back, filling that part of the elevator." He further testified in substance that, when he started the elevator with his hand on the lever, he was facing the office and the deceased was behind him; that when the car had gone up a short distance he turned and saw the legs and feet and so much of the body of the deceased as was below the middle of the abdomen, in the car; that the upper portion of the body was caught between the floor of the elevator and the top of the door which opened into the parlor floor.

It is the contention of the plaintiff that when the elevator was started the rear door was open; if so, it was evidence of negligence.

The only evidence upon this question came from Webster who testified that, from the time he went on duty up to the time the plaintiff's intestate entered the elevator, the rear door had not been opened; but he also testified that just before taking the deceased up he did not know whether the rear door was open or not; and that he "did not look to see whether the rear door was open or closed when [he] . . . got on the elevator." In view of these conflicting statements, and the evidence as to the position of the body of the deceased when the elevator came to a stop, it could have been found that the rear door was open at the time the car was started and remained open up to the time of the accident. The jury could have found that the failure to close this door contributed to the happening of the accident, and that such failure was negligence on the part of the defendants. *Hayes* v. *Pitts-Kimball Co.* 183 Mass. 262. *Munsey* v. *Webb,* 231 U. S. 150.

Although there was nothing to show the exact way in which the accident occurred, still the defendants might be found to be negligent if the jury were satisfied upon the evidence that the injury was due to their neglect. *Heuser* v. *Tileston & Hollingsworth Co.* 230 Mass. 299. *Davis* v. *Boston Elevated Railway,* 222 Mass. 475. *McNicholas* v. *New England Telephone & Telegraph Co.* 196

Mass. 138, 141. *Woodall* v. *Boston Elevated Railway*, 192 Mass. 308. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196.

Under St. 1913, c. 806, a board described as the "Board of Elevator Regulations" was created by the Legislature, with authority to frame regulations relating to the construction, installation and operation of all elevators then installed or thereafter to be installed. This board duly framed such regulations, and they were in force at the time of the accident. Certain of these regulations were admitted properly in evidence, and had the force of law. There was evidence to show that the regulations so admitted were violated by the defendants.

The evidence was undisputed that while Webster was duly licensed to operate the elevator from May 22, 1915, for one year, that no license for that purpose was afterward issued to him until September 14, 1916. It thus appears that at the time of the accident he operated the elevator in violation of law. It also appeared that the elevator was not equipped with any interlocking device which would prevent the operation of the car unless the door was closed.

The operation of the elevator in violation of the foregoing regulations was a penal offence and could have been found to have contributed to the happening of the accident. Accordingly it was evidence of negligence on the part of the defendants. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402, 409. *Doolan* v. *Pocasset Manuf. Co.* 200 Mass. 200.

It could not have been ruled that the deceased was not in the exercise of due care, as that question properly was submitted to the jury under St. 1914, c. 553. We need not consider whether the evidence was sufficient to warrant a finding in favor of the plaintiff independently of the statute.

As the jury found for the defendants under the count for conscious suffering, the defendants' first and second requests have become immaterial; the third could not properly have been given. The exceptions argued, for the reasons above stated, cannot be sustained; those not argued are treated as waived.

*Exceptions overruled.*